***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Jones, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between defendant and the decedent.
3. Defendant is self insured.
4. Defendant employed Roy Dale Mull from July 6, 1976, until November 1, 1996.
5. Roy Dale Mull's medical records were stipulated into evidence as Stipulated Exhibit 1.
6. Dosimetry records for Roy Dale Mull were stipulated into evidence as Stipulated Exhibit 2.
7. Radiation work permits and associated records for Roy Dale Mull were stipulated into evidence as Stipulated Exhibit 3.
8. Dosimetry data for Roy Dale Mull was stipulated into evidence as Stipulated Exhibit 4.
9. Plaintiff's and defendant's expert witnesses' curricula vitae for this case were stipulated into evidence as Stipulated Exhibit 5.
10. The parties' responses to interrogatories were stipulated into evidence as Stipulated Exhibit 6.
11. The parties stipulated the videotape of Roy Dale Mull's deposition testimony is a true and correct copy and can be admitted into evidence by plaintiff without further authentication subject to objections.
12. Barbara Armstrong's report was stipulated into evidence as Stipulated Exhibit 8.
13. The parties stipulate that Roy Dale Mull died on November 28, 1997, as result of neurofibrosarcoma.
14. The issues before the Commission are: (i) whether Roy Dale Mull's neurofibrosarcoma was an occupational disease; (ii) if so, what compensation, if any, is due Roy Dale Mull's estate; and (iii) whether plaintiff is entitled to attorney's fees.
 ***********
The Full Commission adopts in whole the following rulings on evidentiary matters as set forth in the Opinion and Award of Deputy Commissioner Jones as:
 EVIDENTIARY RULINGS
1. Defendant's Motion to Exclude Roy Dale Mull's Testimony from Page 15, Line 4 through Page 16, Line 15 is SUSTAINED.
2. Defendant's General Objection to Statements made by Roy Dale Mull prior to his Death is OVERRULED.
3. Plaintiff's Motion to Exclude Defendant's Deposition Exhibits and Defendant's Expert is OVERRULED.
4. Defendant's Motion to Strike Expert Testimony is OVERULED.
5. The objections raised in the depositions of Drs. Steven Wing, Douglas Crawford-Brown, Roy Albert, Nachman Brautbar, John R. Frazier, John W. Poston Sr., David G. Hoel, Eric J. Hall, and Fred A. Mettler Jr., are OVERRULED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Roy Dale Mull was employed by defendant from July 6, 1976, until November 1996.
2. Roy Dale Mull began work at the Oconee Nuclear Power Plant and was assigned to the Stress Relief crew. His primary responsibilities involved placing heat on metal surfaces to expand metal and working with various types of equipment, including an impeller. Mr. Mull worked in many areas of the plant and also worked outages at the Oconee, McGuire, and Catawba plants.
3. Roy Dale Mull received training regarding radiation protection and received high scores on his testing, indicating he was knowledgeable about radiation and radiation practices.
4. Roy Dale Mull was in good health and missed very little time from work as related to illnesses. He did have medical treatment for kidney stones and a gall bladder surgery.
5. Roy Dale Mull was exposed to radiation while working for defendant. His exposure never exceeded more than 3,906 millirem.
6. In early April 1996, Roy Dale Mull noticed a lump in the inner aspect of his left thigh.
7. A biopsy was performed on the lump, which showed neurofibrosarcoma. Roy Dale Mull's left leg was amputated at the hip on May 3, 1996, and he was hospitalized for five days as result of this surgery.
8. Roy Dale Mull's cancer metastasized to his lungs and he had additional surgery as well as three months of chemotherapy.
9. Roy Dale Mull last worked for defendant on November 1, 1996.
10. On November 28, 1997, Roy Dale Mull died from conditions resulting from the neurofibrosarcoma.
11. Plaintiff relies upon the expert testimony from Drs. Steven Wing, Douglass Crawford-Brown, Roy Albert and Nachman Brautbar.
12. Dr. Wing failed to review or discuss occupational studies that were relevant to this case. Dr. Wing admitted he was aware of epidemiological studies at his deposition, and that these studies contradicted his conclusion.
13. Dr. Wing has undertaken studies on nuclear workers at Oakridge National Laboratory. Dr. Wing does not rebut the extensive body of research that indicates that neurofibrosarcoma is unrelated to radiation exposure unless the person receives a therapeutic dose in excess of 400 million millirem. Roy Dale Mull's exposure was 3,906 millirem.
14. Dr. Crawford-Brown based his testimony on conditional assumptions. Many of these assumptions do not comport with testimony of witnesses who testified on December 12, 2000. Dr. Crawford-Brown's testimony does not lead to any reasonable inference that Roy Dale Mull's exposure was anywhere close to 400 million millirem.
15. None of plaintiff's other witnesses relied on Dr. Crawford-Brown's opinions.
16. Dr. Albert placed the central premise of his testimony on mistaken principles of radiation carcinogenesis. Dr. Albert's testimony indicates a lack of understanding regarding physical dimensions of the impeller in question in this case. Dr. Albert seems unclear and unfamiliar with Mr. Mull's overall work.
17. The Full Commission finds that the greater weight of the evidence would discredit Dr. Albert's theory that the more the radiation dose increases the more malignant the tumor becomes.
18. Dr. Albert relied on an article relating to the treatment of Tinea Capitas in child patients in the 1950's. Tinea Capitas is a fungus disease that originates in the roots of the hair of children. Large x-ray doses in the range of hundreds of thousands of millirems were used as treatment to facilitate hair loss for scalp treatment. As result of the treatment some children develop benign tumors and two children did develop neurofibrosarcoma.
19. There are biological differences between children studies and adults, such as Mr. Mull. The doses used to treat the children in this study were dramatically higher than the doses that plaintiff received.
20. The Full Commission finds that the greater weight of the evidence indicates that this study does not correspond to plaintiff's circumstances and is thus unreliable.
21. Dr. Brautbar was called to support plaintiff's position that Mr. Mull's neurofibrosarcoma was a result of occupational radiation exposure. The Full Commission finds that Dr. Brautbar exhibited a lack of understanding of basic terms used in the field of radiation science and the specific bases for his opinions were unclear.
22. Dr. Brautbar admitted he does not have the expertise to formulate an opinion to the potential effects of radiation on humans. Dr. Brautbar does not specialize in the fields of radiobiology or epidemiology. Dr. Brautbar has no academic employments in the fields of radiology, epidemiology, or radiobiology. Dr. Brautbar is neither a member of any professional radiological societies nor has he received any recognition in the area of radiation.
23. Dr. Brautbar has never performed independent medical research or scientific research into the health of effects of radiation. Dr. Brautbar is also unfamiliar with basic units of measurement used in radiation science. Dr. Brautbar's article indicates that Agent Orange can cause soft tissue sarcomas.
24. Roy Dale Mull had been exposed to Agent Orange outside of his work with defendant.
25. Dr. Brautbar contradicted himself during the course of his testimony indicating there was no association between Agent Orange and soft tissue sarcomas such as neurofibrosarcoma.
26. The Full Commission finds that the greater weight of the evidence fails to support Dr. Brautbar's testimony regarding causation.
27. Dr. Fraizer has devoted most of his professional life to the science of health physics and serves on national and international scientific committees that focus on radiation measurement and protection. Dr. Fraizer opined that Roy Dale Mull's total occupational dose during the eleven years he worked at the Oconee Nuclear Station was 3,906 millirem. Dr. Fraizer reviewed extensive data demonstrating that both the equipment worn by Mr. Mull to measure his exposure and the equipment used by defendant to read and record Mr. Mull's measured dose were functioning properly. Dr. Fraizer opined that Mr. Mull's radiation dose was accurately and reliably measured by equipment used by the Oconee Nuclear Station to measure a workers occupation exposure.
28. Dr. Poston has great recognition within the field of health physics. He has devoted his studies to the relationship between radiation, man, and the environment.
29. Dr. Poston performed a qualitative assessment of defendant's radiation protection program. Dr. Poston's analysis indicated defendant's radiation protection program for workers like Mr. Mull was of high quality and effective.
30. Dr. Poston opined and the Full Commission finds as fact that there is no credible basis to dispute the accuracy of plaintiff's measured occupation dose, which was approximately 3,906 millirem.
31. Dr. Poston indicated that Mr. Mull's occupational dose was routine and typical. The Full Commission finds that the evidence of record shows that Mr. Mull's occupational dose was accurately measured.
32. Dr. Hoel has spent a significant portion of his career studying the effects of radiation on humans, including nuclear workers. He has managed research projects and served in various capacities over the years in studying the effects of radiation on humans. Dr. Hoel has been recognized for his contributions to the scientific knowledge of the area of oncogenic effects on nuclear radiation.
33. Dr. Hoel has also studied the effects of herbicides such as Agent Orange on humans.
34. Dr. Hoel's testimony supports that Mr. Mull's exposure to Agent Orange more likely resulted in Mr. Mull's neurofibrosarcoma than from radiation exposure.
35. Dr. Hoel is recognized as an authority on the effects of radiation on living creatures. Dr. Hoel opined, and the Full Commission finds as fact, that Mr. Mull's neurofibrosarcoma occurred spontaneously because it developed in a location where such tumors naturally occur (i.e. the leg), and because Mr. Mull's neurofibrosarcoma developed at an age when people naturally develop the disease.
36. Dr. Mettler is the Chair of Radiology at the University of New Mexico and has extensive academic and professional work in the field of radiation and radiation protection. Dr. Mettler has written extensively concerning radiation. Dr. Mettler's writings are used to teach and train physicians on the medical effects of radiation from all sources, including x-ray and nuclear medicine.
37. The epidemiological and medical literature upon which Dr. Mettler relies shows no relationship between Mr. Mull's employment and the development of neurofibrosarcoma.
38. First Analysis of Cancer Incidence and Occupational RadiationExposure Based on the National Dose Registry of Canada published in theAmerican Journal of Epidemiology indicates that there is no increase of neurofibrosarcoma among nuclear workers.
39. Another study, Effects of Low Doses and Low Dose Rates of ExternalIonizing Radiation: Causes Mortality Among Nuclear Industry Workers inThree Countries was published in Radiation Research. Nuclear workers in three countries, the United States, Canada, and the United Kingdom were studied to determine the relationship between normal mortality rates for specific cancers and measured occupational exposures to radiation. This research concluded there was no relationship between the radiation received by exposed workers and the rate of those workers developing neurofibrosarcoma.
40. The third study, Combined Analysis of Mortality in the Three UnitedKingdom Nuclear Industry Workforces, 1946 to 1988 also was published inRadiation Research. This research reviewed 40,000 nuclear workers for a forty-year period. The study showed no relationship between occupational radiation exposures and neurofibrosarcoma.
41. Studies of the Mortality of Atomic Bomb Survivors, Report 12, Part1, Cancer: 1950 to 1990 published in Radiation Research concluded that people who received a broad range of radiation doses from the atomic bomb, with some doses as high as several hundred thousand millirem, did not develop an excess number of neurofibrosarcoma.
42. A study performed by the Mayo Clinic showed that of all patients treated for soft tissue sarcomas, only a small number of the reported any prior radiation exposures.
43. Another study performed by Sloan-Kettering Memorial Hospital also concluded that only a small number of all patients treated for soft tissue sarcomas had any prior radiation exposure.
44. In both studies, ninety-seven (97%) percent of neurofibrosarcoma patients had no prior radiation exposure.
45. Having reviewed all of the documentation and literature submitted by both parties, the Full Commission finds that the greater weight of the evidence would indicate that Mr. Mull was not at a greater risk of developing neurofibrosarcoma by virtue of his work related exposure to radiation . . .
46. In reviewing the literature of both epidemiological and clinical studies of neurofibrosarcoma, the greater weight of the evidence shows that neurofibrosarcoma and soft tissue sarcomas are developed for a variety of unknown reasons. Plaintiff has failed to prove by the greater weight of the evidence that his neurofibrosarcoma resulted from his exposure to radiation while working for defendant.
47. The Full Commission finds that Mr. Mull's neurofibrosarcoma fits the pattern of spontaneously occurring neurofibrosarcoma.
48. Roy Dale Mull served in the military in Vietnam from 1968 to 1970 and was exposed to Agent Orange. There have been significant studies relating Agent Orange to the development of neurofibrosarcoma.
49. Roy Dale Mull did file a claim with the United States Veterans Administration for compensation based upon his exposure to Agent Orange in Vietnam. This claim was filed after Roy Dale Mull had been diagnosed with neurofibrosarcoma.
50. The Full Commission finds that the greater weight of the credible evidence of record is that there is no association between radiation at the level that Mr. Mull was exposed and the development of neurofibrosarcoma.
51. Plaintiff has failed to establish that Mr. Mull's disease, neurofibrosarcoma, was caused or significantly contributed by his employment with defendant, or that his employment placed him at a greater risk of contracting neurofibrosarcoma than the general public not so employed.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to show that Mr. Mull sustained a compensable occupational disease. N.C. Gen. Stat. § 97-53(13).
2. The medical causation of Mr. Mull's neurofibrosarcoma and his alleged radiation exposure at work with defendant is a complex question requiring competent expert testimony. Without such expert guidance, this Commission could only speculate on the probable cause of the condition. Competent expert testimony is required to provide that foundation and it is well established that expert testimony is founded not on speculation but on competent evidence upon which to base a decision. Young v. HickoryBusiness Furniture, 538 S.E.2d 912, 915, 353 N.C. 227 (2000); Daubert v.Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).
3. The greater weight of the evidence supports that Roy Dale Mull's neurofibrosarcoma is not an occupational disease, and Mr. Mull was not at an increased risk of developing neurofibrosarcoma than the members of the general public not so employed. N.C. Gen. Stat. § 97-53(13).
4. Plaintiff is, therefore, entitled to no compensation under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. The October 15, 2002, Order of Deputy Commissioner Jones regarding the payment of plaintiff's expert witnesses and plaintiff's counsel's travel expenses shall remain in full force and effect.
3. Each side shall bear its own costs, with the exception of any costs enumerated in the October 15, 2002, Order of Deputy Commissioner Jones.
This 12th day of November 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER